Please be seated, Madam Clerk. Please call the case. 316-0637 IS Children's Connection Inc. doing business as my assist for kids learning center. Appellant, cross appellee, by Scott Conlin, Presbyterian Park District. Appellee, cross appellant, by Edward Dunn. Please proceed. Good afternoon. There are a lot of issues in this case, so I'm going to try to be brief and hopefully get through. But first it's important to realize that the case is dismissed on two points. First, a 2619 motion under section 3-110 of the Tort Immunity Act with prejudice. Then under 2615 for failure to state a cause of action without prejudice. So let me address the section 3-110 dismissal first. That immunity provides that there is no liability for any injury occurring on, in, or adjacent to a waterway, lake, river, or stream, not owned, supervised, maintained, operated, managed, or controlled by a local public entity. The park district is going to argue that we've alleged that the child drowned in the Illinois River. We've gone back and forth on this many times and I'm sure we will again today. But the allegation is that he died on river water flooding the park district's property. This court in Frayne v. Decor Corporation, the first district in choice v. YMCA, both noted that the purpose of that statute is to prevent liability to a public entity that occurs on property not owned, controlled, or managed, or maintained. And in this instance, we don't have that. The allegation is quite clearly that the child died on park district property that was being flooded by river water. We'd be arguing the same thing if the child died in a swale in the same location that had filled with rainwater. In either situation, the park district had control over the property, as they proved in years prior when the river flooded their property and they erected the fence between the playground and the body of water, or the water flooding its property. So I think dismissal of prejudice under 3-110 was improper. Then we move on to the issue of duty under the facts pled. That was a dismissal without prejudice. And I think the cases for the court to focus on are Bruns v. City of Centralia, and I hope I'm pronouncing this correctly, but Coate v. Indiana Harbor Belt. Bruns is a 2014 Illinois Supreme Court case that finally drives home that when you have an open and obvious condition, even if the distraction exception doesn't apply, you still have to have a traditional duty analysis. And that was the crux of my argument in the trial court, and it's the crux of my argument here. So you've got the four factors of duty. The reasonable foreseeability of the injury, likelihood of injury, magnitude of the burden guarding against the injury, and the consequences of placing that burden on the defendant. I think if you analyze each of these factors in this case, it's clear that a duty can be alleged. More importantly, there's a statement in Bruns in paragraph 14. It says, the weight to be accorded these factors depends on the circumstances of a given case. So while the Park District goes through a litany of cases that it says are similar and controlling, they are not the facts of this case. This case deserves an analysis of its own facts. And when we talk about the reasonable foreseeability of injury, we cannot exclude the consequences that have been reaffirmed by the Supreme Court over and over again, most recently in Co-8 versus Indiana Harbor. And I apologize to the court for typographical errors in my briefs, but there is one that is really important that I have to point out that I didn't catch, and neither did my proofreader. When in paragraph, I believe it's 27 of the Co-8 decision, the Supreme Court notes that pursuant to con in its progeny, the law imposes a duty on a landowner, and this goes over the four principles to look at in a case involving a young child. I inadvertently dropped the fourth factor, which is, and for the expense of inconvenience of remedying the defective structure, was left out, and then it just went on to say, or dangerous condition was slight when compared to the risk to children. I think if you look at the foreseeability of the harm in this case, and you consider that a children who is not of an age allowed to be at large, a three-year-old clearly qualifies for that special care under con. And if you look at the restatement 339, comment J in the examples there, that's proven. The illustration six involves a ten-year-old, where quite clearly a ten-year-old is of an age old enough to be allowed at large, where a three-year-old is not. And in our case, we have a three-year-old. And I think in response, you're going to see or hear the Park District argue over and over again, well, England, the England case, the Mustafa case, they all ruled differently. Well, first, again, it's not the circumstances of this case. And secondly, I would say they got it wrong, and that gets us to Perez, which is one of the additional cases that the Park District has to submit, where they somehow come up with this rule that the lack of adult or parental supervision is absolutely not foreseeable. Well, the Supreme Court has never said that. And if that were the case, it would eviscerate the con principle, which was reaffirmed over and over again. If you have a child that's too young to be allowed at large, then there's nothing for the con principle to apply to. If you're saying that doesn't happen because we're not going to have liability because the parent or adult didn't properly supervise that child. Moreover, I mean, beyond just common sense that a three-year-old can get away from any adult, and even a parent exercising the most reasonable care for that young child, children can simply slip away from their parents. And so it is a foreseeable danger. And in this case, we know it's foreseeable to the Park District because they erected this fence in prior years, and although it's not a record, I'll tell you they did it this year. And who do they do that for? What is the protection of that fence for? At the pleading stage, my client is allowed to do a reasonable inference that it's for the very reason to protect children in this playground. They certainly aren't trying to protect the adults who should know better. You know, maybe evidence in the evidence stage, it will turn out that they don't want people getting their shoes dirty and tracking mud into the riverplex. But at this stage, my client is entitled to the reasonable inference that this is a foreseeable death. The Park District was knowledgeable about the likelihood based on a young child that died near its grounds, not on its grounds. It wasn't exactly the same, but it was enough to give them notice that the water is an attraction to children. And when it moves up onto their property only 150 feet away from this playground, it's designed such that an open area for ingress and egress is blocked by the climbing wall. Then they ought to do something about it, and in this year they didn't, and I think I should be allowed to move on to discovery to find out why. So then briefly just touching on the other arguments that might be in the record, and they'll argue that to sustain it, are sufficient to sustain the dismissal. The Wilson-Wanton argument seems to me to be pretty clear. If you have a condition that creates a danger on your property and you know about it and you don't do anything, that shows an utter disregard, at least to the point of getting it to the jury. They've tried to make some sort of inaction isn't sufficient, and the Supreme Court has just summarily dismissed that whole line of arguments that several appellate courts have ruled on. There's a 2-105 argument that it's not liable because it's not liable, there's immunity for not inspecting property that isn't your own. That's not the allegation here. That's an inapplicable immunity. The determination of policy and exercise in discretion. I think the Murray case from the Supreme Court quite clearly says that if there's a more specific immunity that does apply, the exception, in our case the recreational property immunity, has a Wilson-Wanton exception, that one applies. Even if it doesn't, I think that the pleadings don't allow the court to dismiss it based on that immunity. There was no affidavit to establish how this was a decision of policy or an exercise of discretion, and that is not clear on the face of the pleadings. So, that said, I think the court should reverse the trial court's ruling on the immunity statute and reverse it and remand it back for further proceedings if there are any questions. I'll answer them if not. Thank you, counsel. Thank you. Counsel. Good afternoon. To please the court, Mr. Umland, my name is Ed Dutton. I am the attorney for the Peoria Park District. Let me start by saying this is a tragic case, and we all know that. This is the death of a three-year-old child who drowned in the Illinois River, but it's also a case that I've made clear from the day after the pleading was filed that the Park District does not deserve to be in this case. Mr. Umland has argued before you today and has argued before the trial court based upon rules and arguments which the Supreme Court and the appellate court has previously and unanimously rejected time and again. The open and obvious danger rule, the open and obvious risk rule, is the opening issue in this case. We have a three-year-old child who, according to the allegations of the complaint and the third-party complaint, drowned in the Illinois River, which is adjacent to the Park District's playground. Those are the allegations. The first thing Mr. Umland said when he stood up before you today is those aren't really the allegations. He's referencing quite improperly, and he did this throughout his brief, his amended third-party complaint that was never ruled upon by the trial court. It was never briefed by the parties. It contains allegations that are different from what were in the pleadings that were ruled upon. The pleadings that were ruled upon state specifically, and I quote in the copy so that there is no dispute, the plaintiff's complaint, which was incorporated into the third-party complaint via paragraph 2, which says, copy of plaintiff's complaint is attached here to and incorporated herein by reference. Referencing the complaint, it says that Ravante, the child, went missing and that as a result of the negligence of the defendant, the only defendant being Myers, wandered away from said play space, fell into the adjacent Illinois River, and drowned. Not that he drowned on the roof of the Park District building, which is the argument the trial court tried to avoid 3-1-10. Not that he drowned in flood water somewhere else. The river was flooded. There is no dispute. That is the allegation. But the allegations of the complaint and the third-party complaint were that he fell into the Illinois River and drowned, and that river is adjacent to the Park District's Riverplex Center. Now, those allegations become critical. The reason why? They plead directly into the Open and Obvious Risk Doctrine. And Mr. Amuro started again today saying, well, everything has changed after Ward, and the defendant is not really taking into account the Chode case. I pronounce it Chode v. Indiana Harbor Railroad. Nothing could be further from the truth. As the Supreme Court specifically stated in Ward, the Open and Obvious Risk Rule applies in a number of different settings. And there are settings, as the Supreme Court said in Ward, where courts are actually required to do a full looting analysis, the four-part test that Mr. Umbland referenced. But the Supreme Court specifically noted in Ward, that is not true in every case. I'm going to quote from the Ward case because this becomes critical here. I'm at Head Note 7. Certainly a condition may be so blatantly obvious and in such position on the defendant's premises that he could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by that condition. Even in the case of children on the premises, this court, that meaning the Supreme Court, has held that the owner or possessor has no duty to remedy conditions presenting obvious risks, which children would generally be expected to appreciate and avoid. And then the court specifically cites Cope v. Doe, which, as the court says in a parenthetical describing the case, involves a seven-year-old who fell through the ice on an unofficial retention bond. The Supreme Court is there saying, where conditions are so blatantly obvious, like the Illinois River, for example, you do not, as a court, go through the four-part duty test. And the reason why is, as a matter of law, that condition is open and obvious and it relieves the defendant of any duty whatsoever. And the reason why is because the very nature of that type of blatant obvious condition serves as warning itself to anyone old enough to be allowed at large. That same reasoning was followed through in the Mount Zion case, which Mr. Ungman cites too and says, well, you really ought to take a look at Mount Zion. What's interesting there, both in the trial court and here, Mr. Ungman argued that the position he's arguing from Mount Zion is actually based directly upon Justice Harrison's dissent. It was a 6-1 where the Supreme Court found that the danger presented to a child of falling and drowning in a swimming pool was open and obvious. The dissent, Justice Harrison said this, I don't believe that the open and obvious risk rule should be applied to children of tender years. That's nice. Six other members of the Supreme Court heard that argument and rejected it. I cited, additionally, as supplemental authority to the court, a more recent decision that came up in the 2nd District Appellate Court involving a drowning in a pool, Perez v. Heffron. In that case, the court again noted precisely what the Supreme Court had done in the Mount Zion case and said, critically, we as an appellate court have no ability to overturn or disregard Supreme Court precedent. Only the Supreme Court can do that. I cited two cases to support that, I think, basic logical rule, the Boone's Hall case and the Perez case. Here, Mr. Unlund agreed before the trial court, actually pulled up from the report of proceedings with Mr. Unlund, Mr. Unlund had not filed with the court, so I filed it. I said this in the trial court at page C-375. There's a lone dissent in the Mount Zion case in that Justice Harrison, that is Justice Harrison, and Justice Harrison is making the very argument that Mr. Unlund is making here, and I'm going to quote from Justice Harrison's dissent, and I did. And then if we fast forward to Mr. Unlund's argument at page C-382 of the record, Mr. Unlund says this, quote, Going back to the duty argument, Justice Harrison does in fact set forth my argument. So what we have is Mr. Unlund is asking this court, and out of all respect for this court that I have, he's asking this court for something this court cannot do, and that is to adopt the dissent of Justice Harrison in the Mount Zion case in disregard of what the Supreme Court majority had decreed in that case. That rule, I'm sorry? But isn't he arguing really that that rule doesn't apply in this circumstance because this child is not old enough to be considered old enough to be at large? Because this child is only three. I mean, as I understood the argument he's making, it's that this rule doesn't apply necessarily because this child is not old enough to be at large. And that is exactly his argument, and that is exactly what Justice Harrison's argument, and that is exactly what the Supreme Court rejected in Mount Zion. In Koch v. Doe, the Supreme Court applied the open and obvious danger, to a two-year-old child younger than here. And I've cited more than a dozen cases where the courts, both Appellate and Supreme, have applied the open and obvious risk rule. And I can name all of them off. The Unlund case, the Mostafa case. Mostafa involved a two- and three-year-old. The Unlund case involved a three-year-old. The Perez case involved a 34-month-old child. In each of those instances, Stevens v. Riley, Spencer v. City of Chicago, in each of those cases, the child was younger than the age of three, the child here. There is no dispute whatsoever that settled law is, despite Justice Harrison's dissent, that it shouldn't apply to children under the age of seven. The Supreme Court has applied it down to age two. So with that, I don't think there's any issue that the four-part duty analysis does not apply here, and that's because, as the Supreme Court has said, from the Ward case, which Mr. Unlund cites, that where a danger is blatantly open and obvious, there is simply no duty on the landowner because the whole idea is you cannot anticipate and foresee that someone will fail to avoid a blatantly obvious danger. Now, the second argument I had raised was the point, and I don't really believe it's disputed, the point that under state statute, I cited Section 5 of the Rivers, Lakes, and Streams Act, under Section 5 of that act, exclusive and sole jurisdiction over the Illinois River to own, supervise, maintain, and control the state of Illinois. That is a matter of law. Mr. Unlund has never responded back to that. What that means is the park district is not only the owner where the drowning occurred, the park district is the owner of property adjacent to the Illinois River, and the allegations of the complaint and the third-party complaint are the child drowned in the Illinois River. Beyond that, I've raised in the trial court a 2619 argument, and I raised a series of them. Mr. Unlund objected to the appellate court, but I raised those additional arguments. As we all know, as an appellee, I can raise any argument that supports the trial court as long as it's supported by the record. But all of his arguments were raised, briefed, and argued before the trial court. The trial court found it not necessary to reach those. The reason why? On a 2615 basis, the danger was open and obvious, and the trial court was bound by civil law from the appellate court and Supreme Court. And then with regard to Section 3-110 immunity, where Mr. Unlund again, when I go back to the start of this argument, he says, paying attention to what I alleged in my third-party complaint, look at the amended third-party complaint where he tries to draw a distinction between the park district's land, the Illinois River, and the river flooding up on land. What becomes significant there is, with regard to Section 3-110 immunity, it applies to any injury that occurs on, in, or adjacent to, according to the statute. This court reviewed that phrase and applied Section 3-110 immunity in the frame case. It was also applied by the First District Appellate Court in the Choice v. YMCA case, and it was also employed by the First District, or applied by the First District in the McCoy case. And in each of those cases, the courts took the plain language of the statute, it's an absolute immunity provision, and it makes common sense. It says, if the defendant is an adjacent property owner and did not own, control, supervise, manage, or maintain the adjoining water where the injury occurred, there shall be no liability as a matter of law. That's block letter law, it's straightforward, there is no contrary case law. It makes this case rather unique, I think, because most of the things this court hears, there's a contested dispute as to conflicting lines of precedent, for example, or as to interpretations of a statute, or as to something that has never been addressed or ruled upon before. But here, what's both interesting and frustrating from the Park District standpoint is, all of those arguments and issues have previously been dealt with by the Supreme Court, and the Appellate Court, and the legislature. There is no contrary disputing line of authority, this is straightforward. We've explained that from day one. I've also raised an additional immunity argument, that is 2-105, that's based upon the allegations in both the underlying complaint and the third party complaint, that essentially the Park District failed to supervise the area around the playground. I've said, well, the drowning occurred in the adjacent Illinois River, it's not owned by us, under the plain language of 2-105, we are absolutely immune from liability for any failure to inspect property owned by another, i.e., in our state of Illinois, for any hazard or danger that that might present. That's straightforward. I've also raised in the trial court the issue of, even if the plaintiff could get by and avoid the no-duty issue under open and obvious, and the 3-110 immunity, which the trial court found not only applied, but barred any additional attempts at pleading, the plaintiff doesn't remotely state a claim for Wolfram & Watkins conduct. There is no dispute that a playground is recreational property. Setting aside for a moment the fact that the drowning actually occurred off of our property, which is significant, there is no allegation of a defective condition on our property. What Mr. Unwin alleges is this about our property. He says, number one, you had a playground and you put it about 150 feet from the Illinois River. Number two, you put a fence around your playground. Mr. Unwin doesn't like the idea that the fence had openings without gates. There's a number of reasons for that, including that gates present a pinch hazard. But beyond that, there's no obligation under law to put a fence around a playground, much less an enclosed fence with locking gates. It's not required. So the Park District had a playground 150 feet away from the Illinois River. It had four openings for ingress and egress. It was fenced, and this I find to be a really interesting allegation by Mr. Unwin, that the Park District remotely maintained the grassy area between the playground and the Illinois River. Sound like a bad thing to you? Struck me as odd too. He cites that as evidence of willful and wanton conduct on the part of the Park District because we remotely maintained the property. His argument is that made the Illinois River attractive somehow to this child. My argument is, wait a minute. We remotely maintained our grounds, which is a positive thing. That is a useful step. That is designed to prevent injury. And we actually made the Illinois River viewable so that there was no dispute whatsoever. There was a river there, and anyone could see it, including a child as young as three. So the idea that Mr. Unwin is trying to turn the law on its head and say, well, the fact that you remotely maintained ought to be used against you, I find to be striking. That's the last two minutes. Thank you. I cited as supplemental authority, even though I had cited a number of different cases with regard to the issue of willful and wanton conduct, I cited as supplemental authority the recent case of the Illinois Supreme Court in Barr v. Cunningham. I wrote an amicus brief in that case. I know the case very well. In Barr, the Supreme Court adopted the very argument which this Court had adopted in Vyingenau, which I had argued and won before the First District Appellate Court in Tagliere, before the Second District Appellate Court in Callahan, and before the Fourth District Appellate Court in Thurman. And in all of those cases, the same rule comes out, and that is where a public entity takes steps, even if they can later be criticized in hindsight as not having thought of everything possible, if they take steps to minimize or avoid the risk of injury, that is exercising a conscious regard for patron safety and it's the exact opposite of willful and wanton conduct. And that is what the Supreme Court confirmed in Barr v. Cunningham. So with that, I only have a couple of minutes. I do get five minutes back over at the end of this because I have my cross appeal. That involves the sanction issue because, as I started off saying from the outset, I had pointed out to Mr. Umland the day after his third-party complaint was filed, here's a draft copy of my 2615 multi-part motion to dismiss, here's a draft copy of my 2619. There is no way you can plead around or pass these. This is sudden case law. Please stop. The only time I brought my motion for sanctions was after we'd gone all through the briefing and the General Trial Court and Mr. Umland brought a motion for rehearing and the basis for the motion for rehearing was the Supreme Court's Mount Zion case and more specifically the dissent of Justice Harrison. Citing a dissent of Justice Harrison when six members of the Supreme Court rejected that can never as a matter of law be a good faith basis for proceeding. Thank you very much. As I said in my opening, it's a little difficult to argue against allegations that just simply aren't true. The allegations in the complaint allege that Revante died on Park District property that was flooded by the Illinois River water. Again, it's a dangerous condition on their water or on their property caused by the water. If it was rainwater that flooded a swale, it would be the same issue. Somehow magically that the water came from the river doesn't make their property the river. In the first third party complaint, I allege that Revante died on the mowed property of the Park District. That's been ignored constantly. I just can't fight with the straw men that are being raised with this stuff. Are you saying that he misread the complaint? Absolutely. He's cherry picking. If you read the whole thing and plus... But he read it correctly from what he read. Absolutely. Which is why since the 2615 motion was not granted with prejudice, I filed a motion for leave to replete and clarify that that's in the statement. How can I be bound by that if I... What happened to that motion? It wasn't denied. It was just the motion to reconsider and the motion for leave to replete was denied. There's been no determination by the trial court that no facts could be pled. That motion is still pending. I don't know any other way to preserve that once there's been a dismissal on the pleadings without prejudice other than to try to replete. If it's not considered and the motion to reconsider is simply denied, then I assume the judge said, well, the tort immunity dismissal was with prejudice, so that takes care of that. It is true that I commented on Justice Harrison's dissent, and it is true that I commented on Justice Kilbright's dissent in Coey. They raised the issue that no court has ever considered what it means to be a child of an age that can be allowed at large. And I think that both of them suggested maybe that should be analyzed. But in my brief, you'll see that I've...  That appointment was rejected. It wasn't rejected. What they're saying is that the child of an age in Mount Zion was old enough, and that's addressed in my brief. And Justice Kilbright in Coey, the child was 12 years and 9 months. Well, if you look at the examples in the restatement, they start with an example illustration 6. A 10-year-old is clearly old enough to appreciate the danger, but a 3-year-old is not. So there's no real analysis saying what you look at, but there's got to be an analysis. And similarly, if you simply say, well, this case is decided this way, that case is decided that way, therefore it's applicable here without looking at the facts that are pled in this case or could be pled, because I still believe that I can go back and amend again. I've never been precluded from that. So if he's going to continue to say what I've pled, he should do so honestly. I don't even want to respond to the motion for sanctions, because if you continue to look at a case and say there's black-letter law, and the Supreme Court is clearly saying look at each case individually, if you don't accept that, then I should be sanctioned. But if you follow what the Supreme Court's dictate has been over and over again is to look at each case and the facts of each case individually, I have a good faith basis for this, and I, in fact, think that the Court should reverse and remand. Thank you. Thank you very much. This is on the sanctions issue only. With regard to Mr. Romlin stating in his briefing today that I'm somehow, and I'm going to use a euphemism, misrepresenting what's in his third-party complaint. At paragraph 5 of the third-party complaint, he says that the Riverplex Recreational Wellness Center and facility and grounds are located in close proximity to the Illinois River. In paragraph 10, he says, on the date of the occurrence, after having entered the playground, Revante left the playground and made his way to the edge of the Illinois River. In paragraph 11, he says, on that date, Revante entered the Illinois River at a location adjacent to the grounds known as the Riverplex complex, adjacent to the grounds. In paragraph 12, a very important paragraph, on July 17, 2015, after entering the Illinois River, Revante drowned and subsequently died. I'm not misrepresenting. I'm stating exactly what was pleaded in the third-party complaint, and it was based upon those allegations that the child entered the Illinois River. It was adjacent to the Riverplex. He drowned, and that implicates at least two of the defenses that I've raised and the trial court ruled on, the open and obvious risk rule, entering the river and drowning, and section 3-110 immunity. With regard to the statement that Mr. Umland made, that no court, I believe he said, the Supreme Court, has never adopted the position that it is the primary duty of parents, in this case it would be my standing in for the parents, that the primary duty of parents is to be responsible for supervising their children. Yet that is precisely what the Supreme Court held in both the Chote case and the Chote case cited back to Mount Zion. Two specific cases that we have all referenced and talked about in the Mount Zion case involved drowning. And in Mount Zion, which was cited with approval by the Supreme Court in Chote, the court said this, Issuing cases involving obvious dangers like fire, water, or height is not whether the child does in fact understand, but rather what the landowner may reasonably expect of him. The test is an objective one, grounded partially in the notion that parents bear the primary responsibility for the safety of their children. Stated again, where a child is permitted to be at large beyond the watchful eye of his parent, it is reasonable to expect that the child can appreciate certain particular dangers. Citing Mount Zion. That is critical here because, as I have said from the outset, if anyone is cherry picking here, it's Mr. Unwin, because he doesn't like what the courts have said and ruled in those cases. But the very cases he's citing directly undercut the argument he is making. As I mentioned before, in the trial court, I had raised the day after the third party complaint was filed, various defenses, all of them ultimately turned into the very motion to dismiss that we filed. It was identical except that we added in some names and made a couple of other changes. Two weeks later, I followed up with Mr. Unwin and said, here's a copy of the previous motions that I sent you. Please reference Rule 137. Here's a whole bunch of cases under 137 that have ruled as a matter of law that you cannot disregard on point authority and still continue to proceed. Consider this to be a safe harbor letter. Before the trial court, when I raised my motion for sanctions, it was only after we had proceeded through the entire panoply and Mr. Unwin filed a motion for rehearing raising the same case law that he had previously raised. What really struck me in this case is that he has continued that conduct before this court. This court may not be aware, because I doubt you see every plea against every case, but when you sit down and read through the record, you will see. As I mentioned before, I did a motion to file supplemental authority a couple of weeks before we came for oral argument. That motion was granted. I raised two on-point cases, Barr v. Cunningham and Perez v. Heffron, for the reasons I talked about before. They're directly on point. Mr. Unwin objected to that motion and responded back with his own motion to file supplemental authority. The case he cited as supplemental authority in his final report is a 1961 Michigan case. A, that's hardly news. B, if you take a look through the Mount Zion case, you will see that Justice Harrison used that case as the basis for his dissent to say the open and obvious risk of war shouldn't apply to children who are of tender years of age, and the other six members rejected that. If you look further, you'll see that that same case formed the basis for the Fifth District's opinion in the Mount Zion case, which the Supreme Court reversed. In other words, the case is not news. Its preface has been heard directly by the Supreme Court and rejected. Thank you. So when I mentioned my frustration in this case, it's not only that we spent an awful lot of time and money in the trial court addressing the issues that have previously been addressed in the trial, but we've continued that into the appellate court, including he filed a motion to scrap my reply brief because he attempted to limit the scope of the issues in my separate cross-appeal. And when I said, wait a minute, you've been waived because you haven't responded, he didn't follow administrative order 48 of this court, which requires him, if he disagrees with the standard of review, to address it. He didn't address anything. He cited no case where he didn't address mine. And so my point was, how can he then turn around and file a motion to strike my brief? The court ultimately denied that motion, but my point is, it was frustrating and costly for me to go through the process of pointing out what the law order is. With that, I truly appreciate your time this afternoon. If there are no questions, I'll return back. Thank you very much. Thank you, counsel, for your arguments. And I will take this case under advisement and render a decision. Thank you.